ORIGINAL

# In the United States Court of Federal Claims

No. 17-612C
(Filed: May 26, 2017)
NOT FOR PUBLICATION

FILED
MAY 2 6 2017
U.S. COURT OF
FEDERAL CLAIMS

*************************************
MARGARET KATHLEEN NICKERSON-MALPHER,

        Plaintiff,

v.

THE UNITED STATES,

        Defendant.
*************************************

Sua Sponte Dismissal; Subject Matter Jurisdiction; RCFC 12(h)(3); Claims Against State Officials and Agencies; Claims Against Private Parties; Civil Rights Claims; Tort Claims; RICO Claims; Constitutional Claims; Collateral Attack of Prior Decisions; Pro Se Plaintiff; In Forma Pauperis

## OPINION AND ORDER

    In this case, plaintiff Margaret Kathleen Nickerson-Malpher, proceeding pro se, alleges a taking without just compensation in violation of the Fifth Amendment to the United States Constitution based on a seizure of animals from her property, pursuant to federal civil asset forfeiture and state animal cruelty statutes. Plaintiff also alleges fraud, racketeering, conspiracy, prosecutorial and judicial misconduct, failure of federal and state officials to protect her constitutional rights, and violations of the First, Fourth, Fifth, and Sixth Amendments to the United States Constitution. Plaintiff seeks compensatory damages, lost profits, compensation for mental anguish, punitive damages, and attorney's fees and court costs. Plaintiff also filed an application to proceed in forma pauperis. As explained below, the court lacks jurisdiction to consider plaintiff's claims. Thus, without awaiting a response from defendant, the court grants plaintiff's application to proceed in forma pauperis and dismisses plaintiff's complaint.

### I. BACKGROUND

    During a one-year period surrounding 2006, the Maine Animal Welfare Program, under the guidance of then-Director Norma Jean Worley and with the approval of then-Governor John Baldacci, confiscated over 600 animals statewide pursuant to state animal cruelty statutes.[1] Compl. ¶ 4; see, e.g., Me. Rev. Stat. Ann. tit. 17, § 1034 (2005) (allowing law enforcement or

---

[1] The court derives the facts in this section from the allegations set forth in plaintiff's complaint, which are treated as true at this stage of the litigation. See Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). More detail concerning the factual background is provided in Nickerson-Malpher v. Worley, 560 F. Supp. 2d 75, 78-81 (D. Me. 2008).

humane officers to seize animals based on a probable cause finding that animal cruelty statutes have been violated). Twenty animals were seized from plaintiff, including nineteen purebred dogs registered with the American Kennel Club ("AKC"). Compl. ¶ 7. Plaintiff describes the loss—not only to herself but also to veterinarians, researchers, Dog Fancy the Dog Breeders of America, the Poodle Breeders of America, other dog owners, and the general public—of such "nice, quality dogs" as "great indeed." Id. Plaintiff alleges that during her subsequent civil trial during October 2006 in state district court in Calais, Maine, the judge, prosecutor, and defense attorney engaged in fraud through a series of misrepresentations and perjury.[2] Id. ¶ 3. On appeal to the Supreme Judicial Court of Maine, plaintiff was unsuccessful in arguing that the animal cruelty statutes are void for vagueness. Id. ¶ 10.

Following her trial, plaintiff petitioned the Maine Attorney General to conduct an investigation into (1) the alleged "fraud" that took place at her trial and (2) the widespread "questionable" animal confiscations by the Maine Animal Welfare Program. Id. ¶ 4. The office of the Maine Attorney General declined to open an investigation. Id. Governor Baldacci was asked to remove Director Worley from her post, but he refused to do so, resulting in "many" would-be tourists boycotting Maine. Id. Despite the alleged boycott, Governor Baldacci did not pursue an investigation. Id. Plaintiff then wrote to the White House seeking assistance, but did not receive a response. Id. ¶ 6. Over the ensuing ten years, plaintiff filed multiple federal lawsuits regarding the situation, all of which have been dismissed.[3] Id. ¶¶ 2, 11(a); see, e.g., Nickerson-Malpher v. United States, No. 15-cv-676 (D.D.C. filed May 1, 2015); Nickerson-Malpher v. United States, No. 12-cv-677 (D.D.C. filed Apr. 30, 2012); Nickerson-Malpher v. Alexander, No. 11-cv-3247 (D. Md. filed Nov. 14, 2011); Nickerson-Malpher v. Maine, No. 10-cv-329 (D. Me. filed Aug. 8, 2010); Nickerson-Malpher v. Wells Fargo Bank, No. 10-cv-11033 (D. Mass. filed June 10, 2010); Nickerson-Malpher v. Baldacci, No. 07-cv-136 (D. Me. filed Sept. 10, 2007). The instant action was filed on May 5, 2017.

Plaintiff avers that Director Worley was ill-suited for her position with the Maine Animal Welfare Program, and characterizes Governor Baldacci's refusal to dismiss Director Worley from her post as condoning illegal deprivation of property and demonstrating evidence of racketeering. Compl. ¶¶ 4-5. Plaintiff also accuses various individuals and organizations (including the AKC, Dog Breeders of America, animal owners, state government officials, and the federal government generally) of being complicit in the supposed improper taking of animals by failing to investigate and/or intervene, emphasizing that it is "cruel" to apply federal civil asset forfeiture laws to animals because animals are not inanimate objects and doing so ignores the "great bond between animal[s] and human[s]." Id. ¶¶ 7-9. See generally Civil Asset

---

[2] The court recognizes the inaccuracy of referring to a prosecutor in a civil trial. However, a later federal court decision lists a 2006 civil forfeiture case in Calais district court (CALDC-CV-2006-0046), a 2008 criminal case in Calais district court (CALDC-CR-2008369), and a 2008 criminal case in Machias superior court (MACSC-CR-2008202). See Nickerson-Malpher v. Att'y Gen. of Me., Civ. No. 10-329-B-H, 2010 WL 3488657, at *1 (D. Me. Aug. 30, 2010) (unpublished order). Because the specific details of those cases are irrelevant to resolution of the instant case, the court uses the same terminology employed by plaintiff in her complaint.

[3] Plaintiff does not allege that she filed any state lawsuits based on these same facts.

Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202. Plaintiff contends that the alleged judicial and prosecutorial misconduct (including being denied a jury in her Calais district court trial) amounted to fraud, deprived her of due process, and violated her First, Fourth, Fifth, and Sixth Amendment rights.[4,5] Compl. ¶ 11(c). The court construes the jury denial contention as an alleged Seventh Amendment violation.

Taken together, plaintiff asserts, this pattern of conduct is evidence of fraud, conspiracy, and racketeering. Id. ¶ 11(d), (g). For example, plaintiff remarks that there was no reason for the AKC to attempt to intervene in her original trial by writing to the court unless they were engaged in some sort of conspiracy, id. ¶ 11(f), and notes that "terrorist organizations" like People for the Ethical Treatment of Animals and the Humane Society of the United States improperly involve themselves in animal cases and picket dog shows, id. ¶ 11(d)-(e). Accordingly, plaintiff seeks a court order directing the Federal Bureau of Investigation to probe the allegations that federal and state organizations have colluded "to 'legally' steal . . . ordinary citizens' property," id. ¶ 11(g), as well as $25 million in compensation plus attorney's fees, costs, compensation for mental anguish, and punitive damages, id. at 8.

## II. LEGAL STANDARDS

### A. Pro Se Plaintiffs

Pro se pleadings are "held to less stringent standards than formal pleadings drafted by lawyers" and are "to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks omitted). However, the "leniency afforded to a pro se litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); accord Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995) ("The fact that [the plaintiff] acted pro se in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). In other words, a pro se plaintiff is not excused from its burden of proving, by a preponderance of evidence, that the court possesses jurisdiction. See McNutt v. Gen. Motors Acceptance Corp.,

---

[4] Without providing details, plaintiff also asserts that she was denied a "speedy" trial in Machias. Compl. ¶ 11(c). Since the Machias trial was apparently a 2008 criminal case in superior court, see supra note 2, the court construes the assertion concerning lack of a speedy trial as an alleged Sixth Amendment violation.

[5] Pursuant to Rule 201 of the Federal Rules of Evidence, the court takes judicial notice of the following facts concerning the Maine state judicial system: (1) both Machias and Calais are located in Washington County, (2) the superior court for Washington County is located in Machias, (3) there is no superior court located in Calais, (4) there are district courts located in both Calais and Machias, (5) superior court is a trial court of general jurisdiction in Maine and is the only court in Maine where jury trials are available, and (6) both superior and district courts hear civil and criminal cases. See Maine Courts, Me. Judicial Branch, http://www.courts.maine.gov/maine_courts/index.shtml (last visited May 26, 2017). Thus, no jury trial was available in the Calais district court.

298 U.S. 178, 179 (1936); Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).

## B. Subject Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a "threshold matter." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). Subject matter jurisdiction cannot be waived or forfeited because it "involves a court's power to hear a case." United States v. Cotton, 535 U.S. 625, 630 (2002), quoted in Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall) 506, 514 (1868). Therefore, it is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case." Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); accord K-Con Bldg. Sys., Inc. v. United States, 778 F.3d 1000, 1004-05 (Fed. Cir. 2015). Either party, or the court sua sponte, may challenge the court's subject matter jurisdiction at any time. Arbaugh, 546 U.S. at 506.

Whether the court possesses subject matter jurisdiction has not been raised by the parties, but the court must nevertheless examine all pertinent issues relevant to subject matter jurisdiction because "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010); accord Gonzalez v. Thaler, 132 S. Ct. 641, 658 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented."). In other words, a court may examine the issue of subject matter jurisdiction "on its own initiative" at any point in a case. Arbaugh, 546 U.S. at 506; see also Jeun v. United States, 128 Fed. Cl. 203, 209-10 (2016) (collecting cases).

In determining whether subject matter jurisdiction exists, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." Trusted Integration, 659 F.3d at 1163. If the court finds that it lacks subject matter jurisdiction over a claim, Rule 12(h)(3) of the Rules of the United States Court of Federal Claims ("RCFC") requires the court to dismiss that claim.

## C. Tucker Act

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "may not be inferred, but must be unequivocally expressed." United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003). Further, "[w]hen waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 287 (1983).

The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2012); White Mountain, 537 U.S. at 472. However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 298 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

### D. Statute of Limitations

Besides meeting the Tucker Act requirements, any action in the Court of Federal Claims must be "filed within six years after such claim first accrues" to fall within the court's jurisdiction. 28 U.S.C. § 2501. A cause of action accrues "when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988), quoted in San Carlos Apache Tribe v. United States, 639 F.3d 1346, 1350 (Fed. Cir. 2011). The limitations period set forth in 28 U.S.C. § 2501 is an "absolute" limit on the ability of the Court of Federal Claims to exercise jurisdiction and reach the merits of a claim. John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-35 (2008).

## III. DISCUSSION

The court construes plaintiff's complaint as alleging a taking without just compensation in violation of the Fifth Amendment to the United States Constitution by state officials, various civil rights violations by state and federal officials, various torts involving federal and state officials and organizations, a racketeering claim, and challenges to prior state and federal court decisions. Without inquiring into whether plaintiff's claims are barred by claim and/or issue preclusion based on prior federal court decisions, it is clear that the Court of Federal Claims lacks jurisdiction over plaintiff's claims. Consequently, plaintiff's complaint must be dismissed.

### A. The United States Is the Only Proper Defendant in the Court of Federal Claims

Although the court has construed the complaint in the light most favorable to plaintiff, the crux of the allegations contained therein are lodged against (1) former individual Maine state officials and agencies, i.e., Director Worley and unnamed Maine Animal Welfare Program employees, Governor Baldacci, the Maine Attorney General, and the Maine State Legislature;[6] (2) various judges, attorneys, and witnesses involved in plaintiff's state and federal trials and appeals; and (3) certain private entities. However, in the Court of Federal Claims, "the only proper defendant . . . is the United States, not its officers, nor any other individual." Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003); accord RCFC 10(a). Because "the United States

---

[6] Although not specifically named, plaintiff's allegations contain an implied grievance against the Maine State Legislature for enacting certain laws. See Compl. ¶ 10.

itself" is the only proper defendant in the Court of Federal Claims, this court lacks jurisdiction "over any claims alleged against states, localities, state and local government entities, or state and local government officials and employees." Anderson v. United States, 117 Fed. Cl. 330, 331 (2014). In other words, "if the relief sought [in the Court of Federal Claims] is against other than the United States, the suit as to them must be ignored as beyond the jurisdiction of the court." Sherwood, 312 U.S. at 584. Accordingly, to the extent that plaintiff complains of improper conduct by parties other than the United States federal government, this court lacks jurisdiction over those claims, and they must be dismissed.

### B. The Court of Federal Claims Lacks Jurisdiction Over Plaintiff's Civil Rights, Tort, and Racketeering Claims

To the extent that plaintiff asserts civil rights violations, commissions of various torts, and racketeering, plaintiff's claims are outside the reach of this court's Tucker Act jurisdiction.

First, the Court of Federal Claims is not a federal district court. Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002); see also Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553, 563 (2017) (distinguishing between the "Court of Federal Claims" and "federal district courts").

Second, only federal district courts possess jurisdiction to entertain claims alleging civil rights violations. See, e.g., Jones v. United States, 104 Fed. Cl. 92, 98 (2012) (explaining that the Court of Federal Claims has no jurisdiction over claims based on, among other causes of action, alleged "violations of . . . civil rights"); Marlin v. United States, 63 Fed. Cl. 475, 476 (2005) (explaining that Bivens claims and claims alleging violations of 42 U.S.C. §§ 1981, 1983, 1985 must be heard in federal district courts).

Third, this court lacks jurisdiction to entertain claims sounding in tort. 28 U.S.C. § 1491(a); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008). Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680, jurisdiction over tort claims against the federal government lies exclusively in federal district courts. U.S. Marine, Inc. v. United States, 722 F.3d 1360, 1365-66 (Fed. Cir. 2013). Claims of fraud, conspiracy, harassment, breach of fiduciary duty, and negligence sound in tort.[7] See, e.g., Lawrence Battelle, Inc. v. United States, 117 Fed. Cl. 579, 585 (2014) (fraud and negligence); Sellers v. United States, 110 Fed. Cl. 62, 68 (2013) (negligence); Cox v. United States, 105 Fed. Cl. 213, 218 (2012) (harassment, fraud, and breach of fiduciary duty); Phang v. United States, 87 Fed. Cl. 321, 325 (2009) (fraud); Gant v. United States, 63 Fed. Cl. 311, 316 (2004) (conspiracy, fraud, and negligence).

Finally, this court lacks jurisdiction to entertain claims involving racketeering. Jurisdiction over civil actions brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, is vested exclusively in the federal district courts.

---

[7] Although plaintiff only expressly alleges fraud, conspiracy, and racketeering, the complaint can be construed to also include allegations of harassment, breach of fiduciary duty, and negligence.

Stanwyck v. United States, 127 Fed. Cl. 308, 315 (2016) (citing 18 U.S.C. § 1964(c) (2012)). In any event, RICO claims cannot be brought against government entities. Id. at 316.

### C. The Court of Federal Claims Lacks Jurisdiction Over Plaintiff's Other Constitutional Claims

Plaintiff also asserts violations of the First, Fourth, Fifth, Sixth, and Seventh Amendments. However, other than the Takings Clause of the Fifth Amendment, these amendments are not money-mandating. Jiron v. United States, 118 Fed. Cl. 190, 199-200 (2014); Jefferson v. United States, 104 Fed. Cl. 81, 90 (2012); Hernandez v. United States, 93 Fed. Cl. 192, 198 (2010). Therefore, the Court of Federal Claims lacks jurisdiction to entertain plaintiff's First, Fourth, Sixth, and Seventh Amendment claims, as well as plaintiff's Fifth Amendment claim to the extent that it concerns the Due Process Clause.[8] See, e.g., Smith v. United States, 36 F. App'x 444, 446 (Fed. Cir. 2002) (unpublished decision) (Sixth Amendment); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997) (Fourth Amendment); Jaffer v. United States, No. 95-5127, 1995 WL 592017 (Fed. Cir. Oct. 6, 1995) (unpublished decision) (Seventh Amendment); Leblanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (Due Process Clause of the Fifth Amendment); United States v. Connolly, 716 F.2d 882, 887 (Fed. Cir. 1983) (en banc) (First Amendment).

### D. The Court of Federal Claims Cannot Entertain Plaintiff's Collateral Attack Against the Decisions of Other Courts

In addition to alleging a takings claim against state government officials and civil rights and torts claims against myriad actors, plaintiff appears to attempt a collateral attack on the decisions of Maine state courts and various federal district courts. However, the Tucker Act does not provide the Court of Federal Claims with jurisdiction to entertain collateral attacks on decisions of state courts or federal district courts. 28 U.S.C. § 1491(a); see, e.g., Shinnecock Indian Nation v. United States, 782 F.3d 1345, 1352 (Fed. Cir. 2015) ("Binding precedent establishes that the Court of Federal Claims has no jurisdiction to review the merits of a decision rendered by a federal district court."); Vereda, Ltda. v. United States, 271 F.3d 1367, 1375 (Fed. Cir. 2001) ("[T]he Court of Federal Claims cannot entertain a taking claim that requires the court to scrutinize the actions of another tribunal." (internal quotation marks omitted)); Lord Noble Kato Bakari El v. United States, 127 Fed. Cl. 700, 704 (2016) ("[The Court of Federal Claims] lacks jurisdiction to review the decisions of state courts."); Beadles v. United States, 115 Fed. Cl. 242, 246 (2014) ("Plaintiff's claim is a collateral attack on his criminal conviction, and [the Court of Federal Claims] lacks jurisdiction to hear it.").

Plaintiff's recourse concerning prior adverse decisions is "the statutorily defined appellate process," Shinnecock Indian Nation, 782 F.3d at 1353 (citing 28 U.S.C. § 1291), whether in state or federal court. Accord Nickerson-Malpher, 560 F. Supp. 2d at 76

---

[8] To the extent that plaintiff's Fifth Amendment claim concerns the Takings Clause, the court lacks jurisdiction to entertain such claim because it is asserted against state officials and entities rather than the federal government. See supra Part III.A. Moreover, such a claim would be time-barred. See infra Part III.E.

("[Plaintiff's] remedy for any discontent she has with this decision is to appeal to the United States Court of Appeals for the First Circuit."). This court cannot entertain collateral attacks on prior decisions of state or federal courts.

### E. Plaintiff's Claims Are Time-Barred

Even if this court otherwise had jurisdiction to entertain any of plaintiff's claims, they are barred by the six-year statute of limitations generally applicable in the Court of Federal Claims. See 28 U.S.C. § 2501. With the exception of her federal lawsuits, plaintiff complains generally of acts that transpired during or prior to 2006. For instance, the alleged judicial misconduct that plaintiff describes as having taken place in Calais district court following the seizure of her animals "occurred [in] October 2006." Compl. ¶ 3. Therefore, by October 2006, if not sooner, plaintiff was or should have been fully aware of all events giving rise to the claims that are currently before this court, and thus the six-year statute of limitations imposed by 28 U.S.C. § 2501 expired in October 2012. Because plaintiff did not file her complaint until May 5, 2017, this court lacks jurisdiction to entertain plaintiff's claims. Further, to the extent that plaintiff is alleging judicial misconduct in litigation subsequent to the October 2006 trial (including, for example, during her 2008 criminal trials), plaintiff was aware of such conduct more than six years prior to filing her complaint.[9] See, e.g., Nickerson-Malpher, No. 10-cv-329 (D. Me. Sept. 16, 2010) (unpublished order dismissing case); Nickerson-Malpher, 560 F. Supp. 2d at 76-77.

### IV. PLAINTIFF'S APPLICATION TO PROCEED IN FORMA PAUPERIS

As noted above, plaintiff filed, concurrent with the complaint, an application to proceed in forma pauperis. Pursuant to 28 U.S.C. § 1915, federal courts are permitted to waive filing fees and security under certain circumstances.[10] See 28 U.S.C. § 1915(a)(1); see also Waltner v. United States, 93 Fed. Cl. 139, 141 n.2 (2010) (concluding that 28 U.S.C. § 1915(a)(1) applies to both prisoners and non-prisoners alike). Plaintiffs wishing to proceed in forma pauperis must submit an affidavit that (1) lists all of their assets, (2) declares that they are unable to pay the fees or give the security, and (3) states the nature of the action and their belief that they are entitled to redress. 28 U.S.C. § 1915(a)(1). Determination of ability to pay is "left to the discretion of the presiding judge, based on the information submitted by the plaintiff." Alston-Bullock v. United States, 122 Fed. Cl. 38, 45 (2015). Here, plaintiff has fulfilled all three requirements, and the court is satisfied that plaintiff is unable to pay the filing fee otherwise required by RCFC 77.1(c). Therefore, the court grants plaintiff's application and waives her filing fee.

---

[9] Allowing plaintiff to amend her complaint, thus affording her an opportunity to allege more recent judicial misconduct, would be futile because, as explained above, (1) such claims are beyond the jurisdiction of this court, and (2) the proper redress for adverse judicial rulings is to file direct appeals of those rulings.

[10] While the Court of Federal Claims is not generally considered to be a "court of the United States" within the meaning of Title 28 of the United States Code, the court has jurisdiction to grant or deny applications to proceed in forma pauperis. See 28 U.S.C. § 2503(d) (deeming the Court of Federal Claims to be a "court of the United States" for purposes of 28 U.S.C. § 1915).

## V. CONCLUSION

Plaintiff's claims are outside the jurisdiction of this court because they are directed against parties other than the United States; allege civil rights, constitutional, and RICO violations; sound in tort; and/or attempt to collaterally attack decisions of other courts. Further, plaintiff's claims are time-barred by the six-year statute of limitations generally applicable in the Court of Federal Claims.

Therefore, plaintiff's complaint is **DISMISSED** for lack of jurisdiction. Plaintiff's application to proceed in forma pauperis is **GRANTED**. No costs. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Judge